### MILLS v. ROBERTSON.

(Circuit Court, S. D. New York. June 21, 1898.)

#### No. 9,674.

1. CUSTOMS DUTIES—COMMERCIAL DESIGNATION—"COTTON LACES."

In reference to the provision for "cotton laces" in Tariff Act March 3, 1883, c. 121, § 6, Schedule I, 22 Stat. 506, *held* that evidence was admissible as to whether it had a commercial meaning differing from its ordinary signification, and as to what articles such meaning included.

2. SAME—COTTON LACES—COMPLETED ARTICLES.

The provision for "cotton laces" in Tariff Act March 3, 1883, c. 121, § 6, Schedule I, 22 Stat. 506, would, in its ordinary significance, no contrary trade understanding being proved, include not only laces dealt in by the yard but made-up articles which are produced originally as lace only in the process of making the completed article.

At Law. Action to recover duties.

These proceedings were brought by Philo L. Mills and others, constituting the firm of Mills & Gibb, against William H. Robertson, collector of customs at the port of New York, to recover alleged excessive duties exacted by the collector. The pertinent portions of the law from which the question at issue arose are "cotton laces" and "all manufactures of cotton, not specially enumerated or provided for." Tariff Act March 3, 1883, c. 121, § 1, Schedule I, 22 Stat. 506. The goods in controversy consisted of various lace articles in a completed form, such as aprons, collars, collarettes, cuffs, handkerchiefs, fichus, and sets. They were assessed for duty under the former provision and were claimed by the importers to be properly dutiable under the latter. Evidence introduced in behalf of the importers showed that they were not made up from lace in the running yard, but were produced originally as lace only in their completed condition as imported. The importers also sought to show that the term "cotton laces," as used in the law, had a commercial meaning which

did not include such articles. Evidence to that end was admitted over the objection of the government, and at the conclusion of the evidence counsel for the United States moved the court to direct a verdict in favor of the government on the ground that "the term 'cotton laces,' as used in the tariff act of 1883, was a descriptive term, and, consequently, the trade meanings or understandings, if any connected therewith, are immaterial." The court overruled this motion, observing: "I think this case presents a question of fact for the jury."

Curie & Smith (W. Wickham Smith, of counsel), for importers.
James T. Van Rensselaer, Asst. U. S. Atty.

WALLACE, Circuit Judge (charging jury): * * * The issue which you are called upon to determine is an issue of fact and involves the single question whether the importations in controversy * * * were, at the date of the tariff act of 1883, articles which were included within the general commercial designation of laces—"cotton laces." Now, it seems that, by the tariff act of 1883, Congress imposed a duty of 40 per cent. ad valorem upon cotton laces, embroideries, insertings, trimmings, lace window curtains, and some other things; and by the same act imposed a duty of 35 per cent. ad valorem upon certain cords, gimps, galloons, and certain other things, and all manufactures of cotton not specifically enumerated and provided for in this act. It follows that unless the articles in controversy were cotton laces within the meaning of the 40 per cent. provision, they were manufactures not enumerated, and therefore should have been subjected to a duty of 35 per cent. ad valorem instead of 40 per cent. the amount of duty which was exacted.

Now, you have heard the testimony of a large number of witnesses, and the question to be solved by the assistance of that testimony is simply this: Were the articles in controversy commercially known in 1883, at the date of this tariff act—generally commercially known —as "cotton laces"? If such articles were so known, and fall within that general designation, then the defendant is entitled to a verdict. If they do not, then the plaintiff is entitled to a verdict.

Now, before I take up the question in any detail it is my duty to instruct you that the law presumes that the defendant here, the collector of the port, has properly performed his official duty, and that he has subjected the importations to the duties to which they were liable by law; and consequently it is incumbent upon the plaintiffs to establish to your satisfaction by a fair preponderance of testimony that their contention is right, and that the collector was wrong. And if, upon the whole case, you find that the testimony is evenly balanced, and you are unable, after an intelligent examination of this testimony, to discover where the balance lies, why, then it will be your duty to find a verdict for the defendant.

Now, gentlemen, are these articles such as were embraced in the term "cotton laces" according to the common understanding of merchants in this country in 1883? That is all the question there is in this case. That they were cotton laces in one sense does not seem to be open to any dispute. They are laces. They are cotton. They are articles made of cotton lace. So in one sense, they are cotton

laces; and in the ordinary significance of the term, I cannot entertain any doubt, aside from any question of commercial designation, that these articles would have been included within the definition of cotton laces. But it is said that the term "cotton laces" in commercial signification has a different meaning; and if it has, and if according to that meaning these articles were not embraced within the term, then the plaintiff is entitled to a verdict. Testimony has been offered to the effect that according to commercial understanding at the time when this tariff act was passed, cotton laces were understood to include only laces that came by the yard, were bought and sold by the yard, and that made-up articles, like the samples in controversy, were not, according to that commercial understanding, included within the meaning of that term. Well, witnesses have testified to that; witnesses whose intelligence and integrity we have no right to question. But you are not bound to accept their statements. They may really have satisfied themselves that this was so, and yet I think that if there had been no witnesses introduced for the defendant at all, you would have been at liberty to apply your own judgment, analyzing their testimony in the light of cross-examination and determine for yourselves whether their conclusions were correct or not. Now, it appears almost overwhelmingly that there is not anything, and was not anything in trade which was bought and sold as cotton lace by that specific name. If a customer wanted to purchase or to order a particular kind of cotton lace, he ordered it by its designation. If he wanted collarettes, or flounces, or any of these other things, lace in its various forms illustrated by the samples, he would order them by that specific name. If he wanted edging, inserting, cotton lace that ran by the yard, he would order it by that name. Now, how much does all this evidence of commercial designation amount to? Can you, upon this testimony, looking at it as sensible men, come to the conclusion that it meant anything different, according to the understanding of that term among merchants, from what it did according to the understanding of men who were not merchants? Now, this question is a question of fact, and is entirely for you. It is not for me, and whatever opinion I may have upon it, that opinion is not to control you. You are to exercise your own judgment and decide the case according to your own consciences. If you come to the conclusion that according to the general understanding in trade in 1883, at the date of the passage of this act, such articles as these in controversy were excluded in trade understanding from the article known as "cotton laces," then the plaintiff is entitled to your verdict. Otherwise, the defendant is entitled to your verdict.